LAURI S. KOCHENTHAL, Plaintiff, v. EDWARD G. KOCHENTHAL, Defendant.

Supreme Court, Special Term, Nassau County, November 21, 1966.

438

*Singer, Corwin & Bobrow* for defendant. *Joseph F. Minutolo* for plaintiff.

DANIEL G. ALBERT, J. This is a motion to dismiss the complaint in this action and to vacate and set aside the service of the summons and complaint upon the ground that the defendant, presently a nondomiciliary, was not served with process in this State, and that this court accordingly lacks jurisdiction over the person of the defendant.

The issue for determination before the court on this application is the applicability of the so-called "long arm statute" (CPLR 302, subd. [a], par. 1) to an action brought in New York by the plaintiff wife based on a separation agreement executed in New York by the litigating parties, both of whom at the time of the agreement were residents of New York.

The action herein is by the plaintiff wife against the defendant husband for alleged breach of contract and for damages under the terms of the separation agreement entered into between the parties when both resided in this State in 1957.

The defendant now resides in the State of Indiana and was served with process personally in that State, but claims that he is immune from the jurisdiction of this court to entertain an action against him for breach of a separation agreement between him and his wife.

The moving party relies upon the interpretation given to CPLR 302 (subd. [a]) (the single transaction portion) by the court in the case of *Willis* v. *Willis* (42 Misc 2d 473). That case was also relied upon by the Civil Court of the City of New York in *Durgon* v. *Durgon* (47 Misc 2d 513). These cases stand for the broad proposition that the execution of a separation agreement in New York by a person who at the time of the execution of the agreement was, but at the present time is not, a resident or domiciliary of New York, is not a transaction of business within the meaning of the statute sufficient to give the courts of New York jurisdiction of such nonresident and nondomiciliary although personally served with process outside of this State.

A reading of the decision of the learned Justice in the *Willis* case (*supra*), indicates that the court there construed the word "business" as being limited to commercial transactions, and that based upon such assumption the court arrived at the conclusion that it was not therefore "necessary to determine whether the exercise of jurisdiction would be violative of due process" (citing *McGee* v. *International Life Ins. Co.*, 355 U. S. 220; *Hanson* v. *Denckla*, 357 U. S. 235; *Vanderbilt* v. *Vanderbilt*, 354 U. S. 416).

We may assume that the factual situation in the *Willis* case (*supra*), militated toward the conclusion reached therein by the court; for in that case the defendant was not a resident or a domiciliary of this State at the time the agreements were executed. In the case at bar, however, both parties in this action were residents and domiciliaries of New York over a period of years prior to and at the time when the separation agreement was made; they had an infant son of the marriage in this State; the terms of the separation agreement show no indication on the part of either of the parties at the time of the agreement of an intention to remove from the State of New York in the foreseeable future; the fruits of the agreement, by its terms were to be performed in the State of New York in the form of payments for alimony and support to the wife and for the support and education of the child of the marriage, and visitation by the defendant father with his infant son in this State; and the parties agreed upon an address in the City of New York where all mail or other communications or papers were to be sent by either of the parties to the other.

Although some legal commentators are inclined to believe that an agreement between a husband and wife does not constitute doing business in this State pursuant to CPLR 302 (subd. [a], par. 1), I disagree.

The courts of Massachusetts, in construing CPLR 302 (subd. [a], par. 1) have also held to the contrary. In the case of *Spitz* v. *Spitz* decided in the Municipal Court of the City of Boston and subsequently on appeal decided by the Appellate Division of that court in Massachusetts on March 11, 1965 (31 Mass. App. Div. Dec. ——) there was a somewhat analogous situation to that of the instant case. In that case a wife obtained a default judgment in an action to recover for arrears under a separation agreement in the courts of the State of New York. The husband, then residing in Massachusetts, was served in that State with the New York process pursuant to CPLR 302 (subd. [a], par. 1), and after failing to appear in the New York

action the husband was then sued in Massachusetts on the New York judgment and was personally served with process in Massachusetts. The husband there claimed that the execution of the separation agreement did not constitute doing business in New York under New York law. In holding that the husband did not suffer a denial of due process in the New York action, the Massachusetts court stated:

"Another issue raised by the defendant concerns the right of the New York courts to claim jurisdiction over the defendant who was concededly a non-resident and who was not personally served in New York. The statute confers jurisdiction over a non-resident who in person or through an agent transacts any business within the state. While there are decisions in New York which declare that the execution of an agreement between husband and wife does not constitute doing business, Willis v. Willis, 248 N. Y. S. 2d 260; Cockrum v. Cockrum, 20 App. Div. Rep. 2d 642, we do not consider the construction given the law by these courts as authoritative or binding. What is involved in this litigation concerns more than an isolated transaction. The contract on which the plaintiff declared in New York is a mere incident in a complex domestic situation which involves the responsibility of the defendant as the head of a family, over a long period of time. Whether an arrangement whereby one lives apart from his wife and family and leaves the state of their residence can be designated ' doing business ' is beside the point. The expression is not a term of art, and the reports of our highest courts reveal the great difficulty experienced in explaining it.

" See International Shoe Co. v. Washington, 326 U. S. 310 (1945). What does matter is that a course of action inextricably involved in the status and legal responsibilities of the defendant is going on in the State of New York. The jurisdiction of the courts of New York over such a situation is by no means casual. The State of New York can, if it so desires, invoke criminal sanctions to enforce the claims of this plaintiff on the defendant. There is a strong social interest in the security of family life. In our opinion the many considerations which justify the exercise of jurisdiction by the courts over non-resident automobilists apply with equal effect to the situation under review. Pawloski v. Hess, 250 Mass. 22, 24; Hess v. Pawloski, 274 U. S. 352 (1927). Aside from the nature of the claim providing ample ground for the exercise of jurisdiction by the New York courts, the statute provides for notice of the proceedings and an opportunity to be heard. Civil Practice Law Rules (N. Y.) sec. 313.

" Such notice was served upon the defendant in the manner permitted by the New York law. The defendant is in no position to claim a denial of due process. Wuchter v. Pizzutti, 276 U. S. 13 (1928), 50 Harvard Law Review 1130.

" We do not mean to imply by the above that every form of business transaction exposes non-resident participants to the jurisdiction of New York courts, but we do feel that the transaction involved in this cause comes clearly within the ambit of those claims which the state in the exercise of its police power can help enforce through service on non-residents. Hess v. Pawloski, 274 U. S. 352, Wuchter v. Pizzutti, 276 U. S. 13.''

I do not hold to the belief that the statute in question must be so narrowly construed as to be applicable only to pecuniary transactions of a commercial nature. It seems to me that the term " business " should not necessarily be limited to commerce among the States and thus be applicable only to people and corporations engaged in pecuniary gain. I know of no concept of contract law which would exclude agreements between husband and wife in such a manner as to draw a mantle of protection over either the husband or the wife in the event that one of them becomes a resident of another State and proceeds to violate a written instrument duly made and executed between them. In this modern age of remarkable technological progress in every aspect of our economy it seems to me to be rather provincial and nonprogressive to limit progress only to the affairs of commerce but not to the business of human relations. To extend the application of the procedural law by means of the " long arm statute " to the business world and to every individual who sees fit to drive his automobile in a State other than that in which he resides and thus become liable to litigation in that State in the event of an accident, but to slam the door shut upon a husband or wife who have executed an agreement between them which meets every test of contractual law, would not, it seems to me, be in conformity with either the letter or the spirit of our system of jurisprudence as it exists today, and would certainly be throwing a roadblock in the administration of justice as this court understands that term.

The several instances which I have just cited where the " long arm statute " unquestionably would apply in obtaining jurisdiction by personal service of an individual in another State, seem to me to be no more " purposeful " than is the act of a husband and wife in the execution of a separation agreement between them.

The history of the adoption by our Legislature of CPLR 302 indicates clearly that the intent was undoubtedly to confer upon

our courts the jurisdictional power to reach out with process to nonresidents domiciled in other States where the exigencies of the situation justify, provided, however, that the due process clause of the Fourteenth Amendment of our Federal Constitution is not violated.

We know that CPLR 302 is modeled upon section 17 of the Illinois Civil Practice Act and that this act has also been adopted in a number of other States. The Supreme Court of Illinois, in interpreting its own statute stated that it was intended to " reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause " (*Nelson* v. *Miller,* 11 Ill. 2d 378, 389 [1957]).

We further find a very pertinent commentary among the reports of the Advisory Committee that labored with the State Legislative Committee in the drafting of the new CPLR, which states: " While the language of the section offers little guidance as to the type of activity that constitutes the transacting of business, it seems reasonably clear that section 302 was not simply intended to codify traditional jurisdictional standards applied by the New York courts, but to press the power of the courts towards its constitutional limits." (Furth, The New Civil Practice Law and Rules, N. Y. L. J., May 7, 1962, p. 4, cols. 1, 2.)

Thus a succession of cases and statutes have expanded available basis for jurisdiction, and the Legislatures in this and other States have found sufficient reason for the exercise of jurisdiction over those outside the State at the time of service in the special hazards to the public of the motorist or aviator (Vehicle and Traffic Law, §§ 253, 254; General Business Law, § 250; *Olberding* v. *Illinois Cent. R. R. Co.,* 346 U. S. 338, 341 [1953]); in welfare measures designed to protect State residents from both foreign and domestic enterprise (Workmen's Compensation Law, § 150-a; *International Shoe Co.* v. *Washington,* 326 U. S. 310); the public interest in particular kinds of commercial activities (Insurance Law, § 59-a, subd. 2 [insurance activities]; General Business Law, § 352-b [sale of securities]: Social Welfare Law, § 482-d [solicitation of contributions]; *McGee* v. *International Life Ins. Co., supra*); and citizens whose activities transcend State boundaries (see Civ. Prac. Act, § 229-b [natural persons doing business]; *Hanson* v. *Denckla, supra* [insufficient contacts]).

Today's more flexible formula recognizes " such contacts " of the defendant " with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is

brought there " (*International Shoe Co.* v. *Washington, supra,* p. 317). The " quality and nature of the activity in relation to the fair and orderly administration of the laws " are to be weighed. (*International Shoe Co.* v. *Washington, supra,* p. 319). This same formula is " equally applicable to jurisdiction over individuals." (*Davis* v. *St. Paul-Mercury Ind. Co.,* 294 F. 2d 641, 647 [4th Cir.]).

The Advisory Committee also had this to say about the section in question, namely, that it " is designed to take advantage of the constitutional power of the state of New York to subject non-residents to personal jurisdiction *when they commit acts within the state.*" (Emphasis supplied; Second Preliminary Report of Advisory Committee on Practice and Procedure 39 [1958]).

In my opinion the reasoning adopted by the Massachusetts courts in the *Spitz* case (quoted *supra*), in their interpretation of the scope and intent of the section here in question (CPLR 302, subd. [a], par. 1), may be applied with equal force in the case before the court. Here, too, there is involved in this litigation more than just an " isolated transaction ", but rather a contract which was made in this State and which is only an " incident in a complex domestic situation which involves the responsibility of the defendant as the head of a family, over a long period of time "; and which is a continuing situation. I, too, believe that " there is a strong social interest in the security of family life " and that the law which permits the jurisdiction of the courts of New York to be extended over a nondomiciliary who " transacts business " in this State should be interpreted to permit the courts of this State to extend equal jurisdiction over one whose status and legal responsibilities in this State are continuous.

Accordingly, since I see no violation of the due process clause of the Constitution in this instance, and since the defendant herein admits personal service of process upon him in the State of Indiana, this court is of the opinion that the provisions of CPLR 302 (subd. [a], par. 1) and 313 are applicable to the situation at bar to the extent of giving this court jurisdiction over the defendant in view of all the circumstances pertaining hereto. The motion is denied.